IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSE ANDRADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF HAMMOND, an Indiana Municipal Corporation; THE HAMMOND BOARD OF PUBLIC WORKS AND SAFETY, an agency in and for the city; THOMAS M. McDERMOTT, JR., in both his individual and official capacity as Mayor; KRISTINA KANTAR, in both her individual and official capacity as city attorney; KELLY KEARNEY, in both his individual and official capacity as Code Enforcement Officer for the City; and KURTIS KOCH, in both his individual and official capacity as Building Commissioner for the City, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Cause No. 2:19-cv-00430 TLS-JPK |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
<u>DEFENDANTS KANTAR, KEARNEY, AND KOCH</u>**

Defendants Kantar, Kearney, and Koch, in support of their motion to dismiss, state:

### I.     Jurisdictional Facts and Procedural History

**A. Brief chronology of the state court proceedings**

As this Court knows from the earlier case filed by Plaintiff Andrade against the City of Hammond and its Building Inspector, James Callahan, in 2:15-cv-00134-TLS-JEM (hereinafter "15-134"), Plaintiff is challenging a decision by the City that determined a building he owns and which he rents to several tenants in Hammond

is unsafe and uninhabitable. Specifically, there were extensive proceedings including a contested hearing before Hammond's Board of Works, the body under Indiana law and local ordinance that has jurisdiction over unsafe building issues. Those proceedings culminated in a final decision by the Board of Works on March 9, 2017.

Plaintiff exhausted all available avenues of judicial review challenging the Board of Works' determination that the rental units, located at 6609 Jefferson in Hammond ("the property"), are unsafe and uninhabitable. The trial court affirmed the Board of Works' decision and entered specific findings of fact and conclusions of law. (15- 134, Dkt. No. 61-5.) The Indiana Court of Appeals issued its decision in 2018 affirming the Board of Works' decision. *Andrade v. City of Hammond*, 114 N.E.3d 507 (2018), *trans. denied*, 124 N.E.3d 39 (Ind. 2019). Plaintiff's petition for a writ of certiorari Court was denied by the United States Supreme Court. *Andrade v. City of Hammond*, 140 S.Ct. 127 (2019). Therefore, the Board of Works' decision is final as Plaintiff has exhausted all of his opportunities for judicial review of the judgment against him that the property is unsafe and unfit for habitation.

### B. The Board of Works' proceedings and the Court of Appeals' decision affirming the judgment.

The March 9, 2017 judgment from the Board of Works followed a contested hearing occurring on January 12, 2017. (15-134, Dkt. No. 61-1.) During this hearing, Plaintiff, through his counsel, presented documents and witnesses, and had the opportunity to cross-examine the City's witnesses. The following findings

were entered by the Board, and all of the Board's findings were affirmed on appeal to the Lake Superior Court and the Indiana Court of Appeals:

> 5. The property as currently configured contains five apartment units, including one in the basement, two on the main floor, and two on the second floor.
>
> * * * *
>
> 7. Commissioner Koch found that the cellar apartment was unsafe, as were two second floor apartments and one first floor apartment.
>
> * * * *
>
> 19. The ledger entry in the City of Hammond records reflects that the building at 6609 Jefferson was built as a nine-room frame construction.
>
> 20. There are no building permits to show that the property was lawfully converted to a multi-dwelling property at any point in its history.
>
> 21. The building was not erected as a multi-unit structure in 1927 and was never legally converted to a multi-unit apartment building thereafter.
>
> 22. The property at 6609 Jefferson is currently zoned Rl-U, which is Urban Single Family Residential District, and as such allows for two-family attached dwelling units not to exceed twenty percent (20%) of the dwelling units on the block.
>
> 23. The Inspections Department seeks to have the unsafe units removed on the property pursuant to the Indiana Unsafe Building Law, as adopted by local ordinance.
>
> * * * *
>
> 25. Mr. Andrade has made some general repairs to the property since he bought it in 1998; however, there is no evidence that Mr. Andrade has made or has caused to be made major structural repairs that would remove the unsafe conditions existing on and within the premises.
> . . .

>In the present case, the illegal and unsafe premises cannot be used as a five-apartment building and must be restored to a single family dwelling. The four added units must be removed. As currently configured, the 6609 Jefferson Building contains impaired structural conditions and fire hazards that are dangerous to its occupants, rending the premises unsafe and a violation of Indiana's Unsafe Building Law. Ind. Code § 36-7-9-4. At no point during the citation process – which was initiated by the Inspection Department in 2013 – has it ever been demonstrated that the four additional apartments are safe, legally constructed, and compliant with zoning. At no point during the past four years did the owner make repairs on the property to render it safe for occupants. The owner continued to rent the five units and did not convert the property to a safe building despite notice and the opportunity to do so.
>
>In addition, the record of the hearing is devoid of any evidence that the additional apartments were ever lawfully constructed. To constitute a lawful non-conforming use, the use must have "lawfully existed prior to the enactment of a zoning ordinance." *Plaza Group Properties, LLC v. Spencer County Plan Commission*, 877 N.E.2d 877, 884 (Ind.Ct.App. 2007).
>
>Moreover, whatever lawful non-conforming use may have existed prior to the building of the basement/cellar apartment sometime after 1974 was extinguished by the expansion of the non-conforming use. *Hieb v. Metro. Dev. Comm 'n of Marion County*, 412 N.E.2d 321, 323 (Ind.Ct.App. 1980).
>
>Based on the evidence, and law, the five unsafe and illegally constructed units cannot lawfully be occupied in the building's present condition. Should proper zoning approval be obtained, the maximum number of units permitted at this location is two units. Therefore pursuant to the Indiana Unsafe Building Law, the declaration of the Inspections Department that the property is uninhabitable and unsafe is AFFIRMED. Property is to be restored to a single family dwelling.

(15-00134, Dkt. No. 61-1.)

### C. Plaintiff's federal claims asserted in this lawsuit

Plaintiff claims in this lawsuit that his due process rights were violated by the Defendants. Specifically, as to Defendants Kantar, Kearney and Koch that are

the subject of this motion, he claims:

- Defendants Kearney and Koch provided false testimony during the Board of Works hearing in violation of his due process rights (Complaint, Dkt. No. 1, ¶ 31);
- Defendants Kearny and Koch failed to comply with lawfully issued subpoenas issued as part of the action before the Board of Works (*Id.*, ¶¶ 33, 37, 53-60);
- All individual Defendants engaged in a conspiracy to violate his due process rights without complying with Indiana's Unsafe Building Law and applicable Hammond ordinances (*Id.*, ¶¶ 32, 35); and
- Defendants acted in order to deny the right of federal Housing Choice voucher recipients the right to rent a residence (*Id.*, ¶ 42).

As explained below, Plaintiff fully litigated and lost his challenge to the Board of Works' decision that the property was unsafe. Because of that adverse final judgment, many of the claims in this lawsuit cannot proceed as this Court lacks jurisdiction over them. To the extent this Court concludes it has jurisdiction over any of the claims in the Complaint, Plaintiff is precluded from proceeding with them because of the final judgment in 2019.

## II. Argument

### A. The *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction over the Complaint.

The *Rooker-Feldman* doctrine provides that federal courts, other than the

5

United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). The losing party in a state court proceeding is generally "barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). Review of the state court judgment must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257. *See Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

*Rooker-Feldman* bars not only cases seeking direct review of state court judgment; it also bars cases that are "inextricably intertwined" with a prior state court judgment. *See Feldman*, 460 U.S. at 482 n. 16. If adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment. *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997). "The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

Furthermore, the Seventh Circuit has also held that the *Rooker-Feldman* doctrine bars any action that would "effectively reverse" the state court decision.

6

*Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994). In addition, *Rooker-Feldman* doctrine applies despite the fact that the federal-court plaintiff had no opportunity to litigate his claims in the state court proceeding. *Kenmen Engineering v. City of Union*, 314 F.3d 468, 478 (10th Cir. 2002) (noting that *Rooker-Feldman* bars any suit that seeks to disrupt or "undo" a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims).

Here, the Indiana Court of Appeals affirmed the Board of Works' judgment that the property was unsafe and uninhabitable. Furthermore, the Court considered and rejected many of the same claims Plaintiff asserts in the Complaint. Specifically, the Indiana Court of Appeals: (1) affirmed the Board of Works' conclusions that the property was originally constructed as a single-family residence and that the building permit issued in 1927 did not provide for a multi-unit dwelling; (2) ruled the City's non-compliance with a subpoena duces tecum did not unfairly surprise or prejudice Plaintiff in violation of his rights; and (3) held that sufficient evidence separate from the dispute over the subpoenaed materials supported the Board of Works' decision and that as a result, the City's non-compliance with the subpoena was an insufficient basis to reverse the Board of Works' order. *Andrade*, 114 N.E.3d at 515-18.

This judgment from the Court of Appeals not only resolves the allegation that the property was wrongly determined to be unsafe and uninhabitable, but also bars Plaintiff from arguing in this Court that any of the Defendants violated Plaintiff's

7

due process rights as set out in ¶ 31 of the Complaint where he says Defendants provided "false testimony" about the property being in violation of the Unsafe Building Law. This Court also lacks jurisdiction over Plaintiff's claim that the Defendants failed to comply with the subpoena as set out in ¶¶ 33-37 and 53-60 of the Complaint. That is so because Plaintiffs "may not seek a reversal of a state court judgment simply by casting [his] Complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994). In sum, "'[t]he federal courts do not review state court's civil proceedings under the guise of the Civil Rights Act.'" *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir. 1986) (quoting *Fortune v. Mulherin*, 533 F.2d 21, 22 (1st Cir. 1976), *cert. denied*, 429 U.S. 864 (1976)). Simply put, Plaintiff cannot collaterally attack the decision by the Indiana Court of Appeals and assert that the Board of Works' decision is wrong and that Defendants acted improperly during the course of the Board of Works proceedings because *Rooker-Feldman* forbids it.

### B. Application of the Full Faith and Credit Act is an alternate basis for rejecting Plaintiff's attempts to relitigate the decisions of Indiana's state courts.

1. *General Overview*

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the same preclusive effect to a state-court judgment as another court of the State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). No court has the discretion to ignore 28 U.S.C. § 1738. *Id.* Further,

8

Section 1983 is not an exception to Section 1738 and does not guarantee Plaintiff a right to a federal court determination of their constitutional issues even if the federal-plaintiff was an "involuntary litigant" as a defendant in the underlying state court proceeding. *Allen v. McCurry*, 449 U.S. 90, 116 (1980).

28 U.S.C. § 1738 commands that a federal court give the judgments of a state court the same full faith and credit as they have by law or usage in the courts of the State. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984); *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481-82; *Allen*, 449 U.S. at 96. Put simply, a state judgment must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state.

As the Seventh Circuit has held, the issue of whether a federal plaintiff's claims and action are barred turns upon the preclusive effect of the earlier state judgment under the law of the state where the case was decided – in this case, Indiana. *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987); *see also Hensley v. Jasper Police Dept.*, 163 F.Supp. 2d 1006, 1021 (S.D. Ind. 2001). As such,

Defendants now turn to Indiana's preclusion law.[1]

### b. Indiana Preclusion Law

The Court of Appeals' decision bars all claims Plaintiff has brought or could have brought against the Defendants in his Complaint. *See Rose v. Mercantile Nat'l Bank of Hammond*, 844 N.E.2d 1035, n.14 (Ind.Ct.App. 2006) (Res judicata bars "any other claim arising from the same transaction . . . that could have been—but was not—raised in the first [Complaint.]"); *Wagle v. Henry*, 679 N.E.2d 1002, 1005 (Ind. Ct. App. 1996) ("all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action"); 17 IND. LAW ENCYCL. *Judgment* § 168 (Oct. 2005) (applying principles of res judicata, "courts refuse to grant . . . litigants a second opportunity to present merits, if any, of their case").

---

[1] Judge Fletcher of the Ninth Circuit addressed the difference between *Rooker-Feldman* and application of the Full Faith and Credit Act:

> If a party comes to federal court and asks to be relieved of a state court judgment because it was wrongly decided, *Rooker–Feldman* directs the district court to respond that it has no jurisdiction to engage in such review. If the same party comes into federal court and simply pleads the same claims that were decided in the state court judgment, without making reference to that judgment or asking the district court to review its merits, the Full Faith and Credit Act would require the federal courts to recognize the affirmative defense of res judicata when a defendant interposes the state court judgment as a bar to the plaintiff's claims.

*Bates v. Jones*, 131 F.3d 843, 862 (9th Cir. 1997) (Fletcher J., concurring in part and dissenting in part).
   Here, Plaintiff's Complaint refers extensively to the state court judgment and explicitly seeks its reversal. Therefore, in Judge Fletcher's view, *Rooker-Feldman* is the proper doctrine to address Plaintiff's claims. As addressed in the previous section, this Court lacks jurisdiction over Plaintiff's claims because of the state court judgment and the impact of *Rooker-Feldman*. Defendants address Full Faith and Credit as an alternative in the event this Court views *Rooker-Feldman* as inapplicable or as an incomplete defense in this case.

Under Indiana law, for the purposes of claim preclusion, every matter which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated. *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 460 (Ind. Ct. App. 1980).

Collateral estoppel, also called issue preclusion, "bars relitigation of a fact or issue where that fact or issue was necessarily adjudicated in an earlier suit and that fact or issue is presented in the subsequent lawsuit." *Ind. Dept. of Environ. Mgmt. v. Conard*, 614 N.E.2d 916, 923 (Ind. 1993). When collateral estoppel is applied, the issues that were determined in the former adjudication are conclusive in the subsequent action, even if the two actions are on different claims. *Crosson v. Berry*, 829 N.E.2d 184, 192 (Ind. Ct. App. 2005).

The court conducts a two-part analysis to determine whether collateral estoppel should be applied in a particular case: "(1) whether the party against whom the former adjudication is asserted had a full and fair opportunity to litigate the issue and (2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel in the current action." *Nolan v. City of Indianapolis*, 933 N.E.2d 894, 897 (Ind. Ct. App. 2010). A litigant that was not a party to the previous action can apply collateral estoppel so long as these two factors are satisfied. *Microvote Gen. Corp. v. Ind. Election Comm.*, 924 N.E.2d 184, 197 (Ind. Ct. App. 2010).

Collateral estoppel has been divided into offensive collateral estoppel and defensive collateral estoppel; offensive collateral estoppel applies here. *Id.* at 198.

"Offensive collateral estoppel involves a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party." *Id.* Although the use of offensive collateral estoppel is slightly less-favored than the use of defensive collateral estoppel, the Indiana Supreme Court has sanctioned its use so long as the two factors in *Nolan* are satisfied. *Id.* (citing *Tofany v. N.B.S. Imaging Sys., Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993).

> *c. Application of res judicata and collateral estoppel bar Plaintiff's attempt to relitigate claims from the ongoing state court proceedings result that have resulted in a final decision.*

Applying these principles to our case, the Court should find that based on § 1738 and the principles of claim and issue preclusion, this action should be dismissed. First, § 1738, compels this Court to defer to the State Court's judgments in the state court litigation. Second, the issues raised by Plaintiff in his pleadings should be barred by either claim or issue preclusion or both.

It should be barred based on *res judicata* as that doctrine applies under Indiana law. The State Court's judgments are judgments from a court of competent jurisdiction. Second, the state court's decisions are decisions on the merits of that cause of action as well as Plaintiff's causes of action in this case. Third, this State Court judgments arose from a suit between the same parties.[2] Finally, the matters

---

[2] Defendants realize that all the named Defendants in this federal proceeding were not parties to the State Court action. That fact is irrelevant in this preclusion analysis because claim and issue preclusion extend to any parties in privity with the parties in the prior proceeding.

12

at issue in this lawsuit were determined, or could have been determined, in the State Court litigation. For these reasons, this Court should not hear this action as it is precluded under both claim and issue preclusion as well as the basic principles of 28 U.S.C. § 1738.

The same result is required when applying Indiana's collateral estoppel rules. Plaintiff had a full and fair opportunity to litigate his claims in state court. Nothing about the application of collateral estoppel in this case would render that outcome unfair. Therefore, this action should be dismissed.

### C. Plaintiff lacks standing to assert the claims of third parties who have no part in this lawsuit.

The HUD Housing Choice Voucher ("HCV") program "pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a). HCV programs "are generally administered by State or local governmental entities called public housing agencies (PHAs)." Here, Plaintiff claims that potential tenants are being denied the opportunity rent his property. That is, Plaintiff is attempting to assert the rights of third parties who may wish to rent his unsafe and uninhabitable property.

This claim presents a standing problem. Article III provides that the judicial power of the United States "shall extend to all Cases, in Law and Equity" arising under federal law, and "to Controversies to which the United States shall be a Party. . . ." U.S. CONST. Art. III, § 2. In other words, judicial power is limited to actual "cases" or "controversies," without which the court has no power to hear the dispute. *See Federal Elec. Comm. v. Akins*, 118 S. Ct. 1777, 1784 (1998). Several

doctrines have evolved to elaborate the Article III case or controversy requirement, perhaps the most important of which is the standing doctrine. *Allen v. Wright*, 468 U.S. 737, 750 (1984). That doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." *Clinton v. City of New York*, 118 S. Ct. 2091, 2099 (1998).

Under traditional standing analysis, a party "must allege personal injury fairly traceable to the defendant's allegedly wrongful conduct and likely to be redressed by the requested relief." *Id.*; *see generally, Valley Forge Christ. Coll. v. Americans Un. for Sep. of Ch. & St., Inc.*, 454 U.S. 464, 472 (1982); *Love Ch. v. Evanston*, 896 F.2d 1082, 1084-85 (7th Cir.), *cert. denied,* 498 U.S. 898 (1990). Such standing is the "irreducible constitutional minimum" needed to make a justiciable case or controversy. *Steel Co. v. Citizens for a Better Env.,* 118 S. Ct. 1003, 1008 (1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Without it, the court risks expressing an opinion on "abstract, intellectual problems," rather than adjudicating "concrete, living contests between adversaries." *Federal Elec. Comm.,* 118 S. Ct. at 1784 (citations omitted).

The standing doctrine has three requirements. First, the plaintiff must have suffered an "injury-in-fact," which means "a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent,' not 'conjectural' and 'hypothetical.'" *Steel Co.,* 118 S. Ct. at 1016. Second, "there must be causation--a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* at 1016-17. Finally, the injury must be redressable--that is, there must be a

"likelihood that the requested relief will redress the alleged injury." *Id.* at 1017. "This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* For purposes of this case, the precise standing problem is that a party must assert his or her own legal rights and may not rest his or her claim to relief on the legal rights or interests of third parties. *Retired Chgo. Pol. Assn. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir.), *cert. denied*, 117 S. Ct. 305 (1996).

Here, Plaintiff's allegation in paragraph 42 is that unnamed third parties are being denied the opportunity to rent properties in certain areas of Hammond. As a remedy for this harm, Plaintiff wants the Defendants to pay him damages. However, he does not have standing to assert the alleged rights of third parties that he argues are being violated, particularly given the damages remedy he seeks. Therefore, this claim must also be dismissed.

### D. Plaintiff's claims that the Defendants engaged in a conspiracy to violate his due process rights fails because of the intra-agency conspiracy doctrine.

Indiana's federal courts adhere to the intra-corporate conspiracy doctrine. Under the intra-corporate conspiracy doctrine, a conspiracy cannot exist solely between employees or officials of the same entity. *Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1508 (7th Cir. 1994). In other words, an entity cannot conspire with itself.

Here, Plaintiff alleges only that "Defendants, including the Mayor, his corporation counsel, and his building inspector and code enforcement officer, did engage in a conspiracy, including a pattern of conduct designed to violate Andrade's due process rights and thereby deny Andrade the full use and benefit" of the property. (Complaint, ¶ 32.)

Because all of these officials worked for the City of Hammond, there can be no conspiracy as that concept is understood under 42 U.S.C. §§ 1983 and 1985(3). Therefore, dismissal of this claim is required.

### III. Conclusion

This Court lacks subject matter jurisdiction over Plaintiff's Complaint. Therefore, this action should be dismissed.

> FROST BROWN TODD LLC
>
> By: */s/Anthony W. Overholt*
>     Anthony W. Overholt, 16481-49
>
> Attorneys for Defendants Kristina Kantar, Kelly Kearney and Kurtis Koch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of January, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Patrick B. McEuen<br>McEuen Law Office<br>6382 Central Avenue<br>Portage, IN  46368 | Kevin C. Smith<br>5925 Calumet Avenue<br>Hammond, IN  46320 |
| John M. McCrum<br>Robert J. Feldt<br>Kevin T. McNamara<br>Eichhorn & Eichhorn, LLP<br>2929 Carlson Drive, Suite 100<br>P.O. Box 2275<br>Hammond, IN  46323 | |

                                      */s/Anthony W. Overholt*
                                      Anthony W. Overholt

FROST BROWN TODD LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
317-237-3900 (Fax)
aoverholt@fbtlaw.com

0119704.0727481   4843-2097-0671v1