# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JOSE ANDRADE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF HAMMOND, et al.,<br><br>　　　　Defendants. | CAUSE NO.: 2:19-CV-430-TLS-JPK |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motions to Dismiss [ECF Nos. 23, 25], filed on January 8, 2020. In pertinent part, the Defendants argue that this Court is without jurisdiction due to the *Rooker-Feldman* doctrine. The Court agrees with this argument. As such, the Motions to Dismiss are granted.

## PROCEDURAL HISTORY

The Plaintiff is the owner of a rental property in Hammond, Indiana. *See* Pl.'s Compl. ¶ 14, ECF No. 1. In May 2013, the Defendants, which include the City of Hammond and various city employees, began investigating the Plaintiff's rental property for alleged safety violations. *See id.* ¶¶ 26, 28. On January 12, 2017, the Hammond Board of Public Works and Safety (the board) conducted an evidentiary hearing regarding whether the Plaintiff's rental property was in an unsafe condition. *Id.* ¶ 29; *see* Ex. C, Tr. of Board Hr'g, p. 4, ECF No. 61-3, Case Number 2:15-CV-134.[1] Kurtis Koch, the building commissioner of the City of Hammond, and Kelly Kearney, a former code enforcement commissioner for the City of Hammond, testified at length

---

[1] The Court is taking judicial notice of public documents from the state administrative proceedings which were initiated against the Plaintiff's rental property. These documents were filed in *Andrade v. City of Hammond*, Case Number 2:15-CV-134, which is another case pending before this Court regarding the same rental property. Also, the procedural history of the state administrative proceedings is mentioned only to the extent necessary for the resolution of this case.

about the alleged unsafe conditions at the Plaintiff's rental property. *See* Ex. C, Tr. of Board Hr'g at 14–132.

On March 9, 2017, the board issued an order in which it found that the Plaintiff's rental property "contains impaired structural conditions and fire hazards that are dangerous to its occupants, rendering the premises unsafe and in violation of Indiana's Unsafe Building Law. Ind. Code § 36-7-9-4." Ex. A, Findings of Fact and Decision, p. 9, ECF No. 61-1, Case Number 2:15-CV-134. The board also found that the Plaintiff did not "make repairs on the property to render it safe for occupants. The owner continued to rent the five units and did not convert the property to a safe building despite notice and opportunity to do so." *Id.* The board also found that the property "was not erected as a multi-unit structure in 1927 and was never legally converted to a multi-unit apartment building thereafter." *Id.* at 4. The board concluded that "the five unsafe and illegally constructed units cannot lawfully be occupied in the building's present condition." *Id.* at 10. As such, the board affirmed that the property was unsafe and ordered that the property be restored to a single-family dwelling. *Id.*

The Plaintiff appealed that decision to the Superior Court of Lake County, Indiana (state trial court). *See* Ex. D, Tr. of Judicial Review Hr'g, p. 3, ECF No. 61-4, Case Number 2:15-CV-134. On February 8, 2018, the state trial court conducted a lengthy evidentiary hearing. *Id.* Following the presentation of evidence, the Defendants argued that the Plaintiff failed to demonstrate that the board's decision was unreasonable. *Id.* at 108. The Defendants further argued that the Plaintiff's arguments were irrelevant to the underlying issue of whether the property was an unsafe building. *Id.* at 104. In response, the Plaintiff essentially argued that (1) the board acted beyond its legal authority, (2) the property was originally built and zoned as a multi-family unit, and (3) the Defendants failed to comply with a subpoena. *See id.* at 111–16.

On March 28, 2018, the state trial court found that the board's findings of fact were "well-supported by the record." Ex. E, Order of Lake Superior Court, p. 2, ECF No. 61-5, Case Number 2:15-CV-134. The court concluded that the Plaintiff's arguments regarding (1) the Defendants' failure to comply with a subpoena and (2) whether the property was originally a multi-family unit were "not determinative of whether the building is 'unsafe' as defined by Ind. Code § 36-7-9-4(a) and as found by the Safety Board." *Id.* at 5. By implication, the court also concluded that the board acted with statutory authority. *See id.* at 4, 6. Accordingly, the court affirmed the board's order. *Id.* at 5–6.

The Plaintiff then appealed to the Indiana Court of Appeals and argued that (1) the board's actions violated the Takings Clause, (2) one of the board members acted improperly or acted from bias, (3) the board exceeded its statutory authority when it ordered him to restore the property to a single-family home, (4) the board's finding that the property was originally built as a single family residence was not supported by substantial evidence, and (5) the Defendants' failure to comply with a subpoena required that the board's decision be reversed. *See Andrade v. City of Hammond*, 114 N.E.3d 507, 510, 514 n. 1, 516 n. 5 (Ind. Ct. App. 2018). The Indiana Court of Appeals concluded that the Plaintiff's "contentions that the Board's actions were in violation of the Takings Clause and were an abuse of discretion are undeveloped and unsupported by cogent authority . . . . Those arguments are waived for our review." *Id.* at 514 n. 1. The court held that the Plaintiff's claim "of impropriety or bias on the part of one of the Board members . . . was not raised at the trial court level and, therefore, is waived for our review." *Id.* at 516 n. 5. The court also rejected the Plaintiff's argument that the board did not have the lawful authority to order him to restore the property to a single-family dwelling. *Id.* at 515–16. The court affirmed the board's finding that the property was originally a single-family dwelling. *Id.* at

516. Finally, the court rejected the Plaintiff's argument regarding the Defendants' failure to comply with the subpoena. *Id.* at 516–17.

Thus, the Indiana Court of Appeals affirmed the trial court's order. *See id.* at 518. The Plaintiff appealed to the Indiana Supreme Court, but his petition to transfer was denied on March 7, 2019. *Andrade v. City of Hammond*, 124 N.E.3d 39 (Ind. 2019). The Plaintiff then appealed to the Supreme Court of the United States, but his petition for certiorari was denied on October 7, 2019. *Andrade v. City of Hammond, Ind.*, 140 S. Ct. 127 (2019).

On November 11, 2019, the Plaintiff filed a Complaint for Damages [ECF No. 1] in the United States District Court for the Northern District of Indiana. In essence, the Plaintiff alleges that the Defendants (1) knowingly made false statements before the board and the state trial court, (2) failed to comply with a lawfully-issued subpoena without justification, (3) targeted his property because he rented to low income residents, (4) committed a malicious prosecution against him, and (5) conspired to violate his right to due process. *See* Compl. ¶¶ 31–63.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may dismiss a claim for lack of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); Fed. R. Civ. P. 12(b)(1). "In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digital*, 572 F.3d at 443). "A factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient. In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.* (quoting *Apex Digital*, 572 F.3d at 444). "In contrast, a facial challenge argues that the plaintiff has not

sufficiently '*alleged* a basis of subject matter jurisdiction.' In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Apex Digital*, 572 F.3d at 443–44). Because the Defendants argue that the Court is without jurisdiction due to the *Rooker-Feldman* doctrine, the Defendants' argument is best understood as a factual challenge. *See Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 745 (7th Cir. 2012). Thus, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). Moreover, the district court may take judicial notice of matters of public record—including court documents filed in an earlier lawsuit—without converting a motion to dismiss into a motion for summary judgment. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492–93 (7th Cir. 2011); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

**ANALYSIS**

The Defendants argue that this Court is without jurisdiction due to the *Rooker-Feldman* doctrine. The Court concludes that this doctrine applies because (1) the Plaintiff's federal claims are inextricably intertwined with a prior state court judgment and (2) the Plaintiff had a reasonable opportunity to present his constitutional arguments during the state court proceedings. As such, the Court is without jurisdiction due to the *Rooker-Feldman* doctrine.

**A.**     **The *Rooker-Feldman* Doctrine**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[U]nder what has come to be known as the *Rooker-Feldman*

doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (discussing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cty. Circuit Court Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (citing *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012)).

"Claims that directly seek to set aside a state court judgment are *de facto* appeals which trigger the doctrine." *Id.* (citing *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)). "But even federal claims which were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment." *Id.* "While any definition of 'inextricably intertwined' is problematic, the 'crucial point is whether the district court is in essence being called upon to review the state-court decision." *Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir. 1994) (internal quotation marks omitted (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993))); *see also Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). "Ultimately, the 'determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy.'" *Jakupovic*, 850 F.3d at 902 (quoting *Sykes*, 837 F.3d at 742). If a claim "is inextricably intertwined with a state court judgment—that is, that the former indirectly seeks to set aside the latter—then [the Court] must determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings. If so, the claim is barred." *Jakupovic*, 850 F.3d at 902 (citing *Taylor*, 374 F.3d at 533).

## B. Inextricably Intertwined

The Court first concludes that the Plaintiff's federal claims are inextricably intertwined with the prior state court judgment. In support of this conclusion, the Court relies upon the following cases.

In *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 389 (7th Cir. 2019), the Swartzes were the owners of various farm animals. Following an investigation and an ex parte proceeding, an Indiana trial court determined that there was probable cause to believe that animal neglect or abandonment was occurring. *Id.* The court then issued an order to seize their animals. *Id.* Thereafter, the state of Indiana filed animal cruelty charges against the Swartzes. *Id.* The Swartzes contested the court's probable cause finding, but their argument was rejected. *Id.* Following various hearings, the court issued orders which placed the animals for adoption and required the Swartzes to reimburse the animal shelter. *Id.* at 390. The state deferred prosecuting the Swartzes as part of a pretrial diversion agreement, and the court entered an order recognizing this agreement. *Id.* Following the state court proceedings, the Swartzes filed a federal lawsuit alleging a conspiracy to seize their animals in violation of the Fourth and Fourteenth Amendments. *Id.* The district court entered judgment in favor of the defendants. *Id.* On appeal, the Seventh Circuit affirmed on the basis of the *Rooker-Feldman* doctrine because the plaintiff's federal claims were inextricably intertwined with the state court judgments. *Id.* at 391. In reaching this result, the Seventh Circuit explained as follows:

> The Swartzes' § 1983 claims are not direct challenges to any state court order, so to be implicated by *Rooker-Feldman* they must be "inextricably intertwined" with a state court judgment. Because the injury the Swartzes protest— the seizure and subsequent permanent placement of their livestock—was effectuated by several orders of the [state trial court], their claims are inextricably intertwined with state court judgments.

> The state court's finding of probable cause and ordered seizure of the animals produced the injury claimed by the Swartzes. This is true even though the Swartzes now claim that the injury originated in a conspiracy among mixed state and private actors. To find that the defendants acted wrongfully in seizing the animals would call into question the state court's judgment that there was probable cause the animals were being neglected under Indiana law. The same problem arises with the court's permanent placement determination, reimbursement order, and the pretrial diversion agreement: if the animals were not being neglected, there would be no basis for permanently housing them elsewhere or for requiring the Swartzes to reimburse Heartland for the animals' care.
>
> When a state court judgment is the cause of a plaintiffs' injury, *Rooker-Feldman* bars federal review. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. This is the case even when plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions.

*Id.* at 391 (internal citations and quotation marks omitted).

In *Crestview Village Apartments v. United States Department of Housing and Urban Development*, 383 F.3d 552, 554 (7th Cir. 2004), the City of Kankakee filed a building code enforcement action in state court against Crestview Village Apartments. The city and Crestview eventually settled the dispute, and Crestview agreed that it would repair the building code violations. *Id.* at 554–55. The state trial court entered an order which approved the settlement agreement. *Id.* at 555. Thereafter, Crestview filed a complaint in federal court in which it alleged that the city and other defendants (1) targeted its property due to the racial composition of its tenants and (2) conspired to violate the Fair Housing Act and federal civil rights statutes. *Id.* Regarding the alleged conspiracy, Crestview alleged that it was required to defend against unsubstantiated lawsuits and excessively harsh administrative actions. *See id.* at 556. The district court dismissed the complaint for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine. *Id.* On appeal, the Seventh Circuit concluded that the Plaintiff's federal claims were inextricably intertwined with the state court judgment which approved the settlement agreement. *Id.* In reaching this conclusion, the Seventh Circuit reasoned as follows:

8

> Each count of Crestview's federal complaint alleges that, as a result of a conspiracy involving defendants, it was injured in that it was "forced to defend *unsubstantiated* lawsuits, and excessively harsh administrative actions . . . ." Thus, in essence, Crestview is challenging as baseless the state court order requiring Crestview to cure the building code violations. After all, Crestview's alleged injury—having to defend unsubstantiated lawsuits—was only complete after the state court entered the order and thereby made an implicit finding that the suit was not unsubstantiated.
>
> A finding by the district court that defendants did, as Crestview alleges, conspire to bring unsubstantiated lawsuits would undermine the state court's implicit holding that the state action was justified. As this court has consistently made clear, the *Rooker-Feldman* doctrine prohibits federal courts from entertaining such attempts to undo state court decisions. That this suit was cast as a civil rights action is of no consequence. Accordingly, we agree with the district court's determination that the *Rooker-Feldman* doctrine operates as a jurisdictional bar to Crestview's suit in federal court.

*Id.* at 556–57 (internal citations and quotation marks omitted).

In *Garry v. Geils*, 82 F.3d 1362, 1363–64 (7th Cir. 1996), the Village of Bensenville initiated condemnation proceedings so that it could construct a drainage ditch on James Garry's property. After conducting a hearing on the matter, the Illinois trial court concluded that (1) the village had the authority to exercise the power of eminent domain, (2) Garry's property was subject to this power, and (3) the village properly exercised the power of eminent domain. *Id.* at 1364. The court also made a preliminary determination regarding the amount of just compensation to be paid for the condemnation. *Id.* Thereafter, the state trial court issued an order which vested the necessary easements to the village. *Id.* Following the state court proceedings, Garry and his tenant (the plaintiffs) filed an action in federal court seeking monetary damages and an injunction against the village. *Id.* In relevant part, the plaintiffs alleged that their constitutional rights were violated because the property was targeted for condemnation because of their political views. *Id.* The district court granted the village's motion to dismiss on the basis

9

of res judicata. *Id.* On appeal, the Seventh Circuit affirmed on the basis of the *Rooker-Feldman* doctrine. *Id.* at 1370. In reaching this result, the Seventh Circuit concluded as follows:

> The plaintiffs are essentially claiming injury due to a state judgment against them—the judgment condemning a portion of the Garry property. As their counsel acknowledged at oral argument, if the plaintiffs had been able to avoid the state court's condemnation of the property, they would have had no federal action to bring. While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court.
>
> In the context of the condemnation action, the [state trial court] found that the power of eminent domain was being "properly exercised" in this case. Obviously, the power of eminent domain is not being properly exercised if it is being unconstitutionally exercised, as plaintiffs allege. If the plaintiffs desired to challenge the condemnation action against them as unconstitutional, they should have done so through the Illinois condemnation process, and ultimately to the United States Supreme Court if necessary. That the plaintiffs may have already waived the opportunity to challenge the constitutionality of the condemnation, leaving them with no forum in which to assert their claim, does not affect our lack of jurisdiction under *Rooker-Feldman*.

*Id.* at 1368.

Much like the property owners in *Swartz*, *Crestview Village Apartments*, and *Garry*, the Court concludes that the Plaintiff's claims in federal court are inextricably intertwined with the state court judgment. Specifically, the Plaintiff alleges in this federal lawsuit that (1) the Defendants targeted his property because he was renting to low income residents, (2) he was subjected to a malicious prosecution, (3) the Defendants knowingly presented false information to the board, (4) the Defendants knowingly failed to comply with a subpoena without justification, and (5) the Defendants conspired to violate his constitutional rights. However, notwithstanding these allegations, the Plaintiff's injuries arise from a board order which found that his property was an unsafe building. The board's order was affirmed by the state trial court and the Indiana Court of Appeals. As such, because the Plaintiff's injuries were effectuated by

several state court orders, his claims are inextricably intertwined with the state court judgment. Moreover, the *Rooker-Feldman* doctrine applies "even when the plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions." *Swartz*, 940 F.3d at 391. Likewise, for the purposes of the *Rooker-Feldman* doctrine, the mere fact that the Plaintiff's allegations in this federal case are "cast as a civil rights action is of no consequence." *Crestview Vill. Apartments*, 383 F.3d at 557; *see also Stuckey v. Hous. Auth. of Cook Cty.*, No. 19-2136, 2020 WL 887720, at *2 (7th Cir. Feb. 24, 2020).

Furthermore, the Plaintiff is essentially asking this Court to review the decisions of the state trial court and the Indiana Court of Appeals. For example, within his Complaint, the Plaintiff essentially argues that the board did not have the lawful authority to require him to convert his rental property to a single-family residence. *See* Compl. ¶¶ 18, 36, 46. However, this argument was rejected by the Indiana Court of Appeals. *See Andrade*, 114 N.E.3d at 515–16. The Plaintiff also seeks to relitigate the Defendants' failure to comply with a subpoena. *See* Compl. ¶¶ 33, 37. However, the Indiana Court of Appeals rejected this argument both on the basis of waiver and on the merits. *Andrade*, 114 N.E.2d at 517.

Finally, the Plaintiff's allegations conflict with the orders issued by the state trial court and the Indiana Court of Appeals. For example, the Plaintiff alleges that the Defendants subjected him to a malicious prosecution and violated his constitutional rights. A finding that the Plaintiff was subject to a malicious prosecution would severely undermine the state court orders which affirmed the board's findings. *See Swartz*, 940 F.3d at 391 ("To find that the defendants acted wrongfully in seizing the animals would call into question the state court's judgment that there was probable cause the animals were being neglected under Indiana law."); *Crestview Vill. Apartments*, 383 F.3d at 556 (concluding that the plaintiff's allegation that the city initiated an

unsubstantiated lawsuit would undermine the state court's implicit holding that the lawsuit was justified); *Garry*, 82 F.3d at 1368 (concluding that the plaintiffs' allegation that their property was condemned for political retribution conflicted with the state court's finding that eminent domain was being properly exercised).

As such, for the reasons stated above, the Court concludes that the Plaintiff's federal claims are inextricably intertwined with the prior state court judgment.

C.     **Reasonable Opportunity to Litigate**

The Court also concludes that the Plaintiff had a reasonable opportunity to present his claims made in this federal lawsuit during the state court proceedings.

The Unsafe Building Law (UBL) provides a statutory framework for a city, town, or county to address unsafe buildings. *See Andrade*, 114 N.E.3d at 514 (citing Ind. Code § 36-7-9 *et seq.*). As relevant here, an unsafe building is any building or structure that is in an impaired condition that makes it unsafe, a fire hazard, a hazard to the public health, or is dangerous because of a violation of a statute or ordinance concerning building condition or maintenance. *See* Ind. Code § 36-7-9-4(a)(1)–(3), (5). When a building is unsafe, a municipality may issue an order that requires, among other things, the vacating of the building, the sealing of the building, the removal of fire hazards or other public health hazards in or around the building, the repair or rehabilitation of the building, and the partial or complete demolition of the building. *See* Ind. Code § 36-7-9-5(a)(1), (2), (4)–(7).

An order issued pursuant to the UBL is appealable to the state trial court in which the building is located. Ind. Code § 36-7-9-8(a). "A person requesting judicial review . . . must file a verified complaint including the findings of fact and the action taken by the hearing authority." Ind. Code § 36-7-9-8(b). "An appeal under this section is an action de novo. The court may

affirm, modify, or reverse the action taken by the hearing authority." Ind. Code § 36-7-9-8(c). "Under a de novo review, the trial court may, to a limited extent, weigh the evidence supporting the enforcement authority's findings of fact." *Groff v. City of Butler*, 794 N.E.2d 528, 533 (Ind. Ct. App. 2003). However, "the trial court may not substitute its judgment for that of the agency below; rather, the facts should be determined only one time." *Kopinski v. Health and Hosp. Corp. of Marion Cty., Ind.*, 766 N.E.2d 454, 455 (Ind. Ct. App. 2002). Indeed, the state trial court may negate a finding of fact "only if, based upon the evidence as a whole, the finding of fact was (1) arbitrary, (2) capricious, (3) an abuse of discretion, (4) unsupported by the evidence or (5) in excess of statutory authority." *Kollar v. Civil City of South Bend*, 695 N.E.2d 616, 619 (Ind. Ct. App. 1998) (quoting *Uhlir v. Ritz*, 264 N.E.2d 312, 314 (Ind. 1970)).

However, notwithstanding the apparently limited scope of review, a party appealing an order pursuant to the UBL may raise additional issues in his complaint which the state trial court must fully consider. *Kollar*, 695 N.E.2d at 620, 623 n. 4; *see also City of Mishawaka v. Stewart*, 310 N.E.2d 65, 68 (Ind. 1974). Indeed, after losing at the administrative level, parties can raise new constitutional arguments to the state trial court. *See, e.g.*, *Kollar*, 695 N.E.2d at 623 n. 4 ("The City asserts that [the Kollars' argument regarding due process and bias] was also waived by the Kollars' failure to properly raise it below. However, we conclude that the issue was properly raised because bias was specifically listed in the complaint."); *Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 735 (Ind. 2013) ("[A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or legal principle." (quoting *City of Mishawaka*, 310 N.E.2d at 68–69)). Furthermore, Indiana courts have concurrent jurisdiction over constitutional

13

claims brought pursuant to 42 U.S.C. § 1983. *Haywood v. Drown*, 556 U.S. 729, 735 (2009); *Snyder v. King*, 958 N.E.2d 764, 787 (Ind. 2011).

Turning to the Complaint [ECF No. 1] filed in this Court, the Plaintiff alleges numerous reasons why his due process rights were violated in relation to the proceedings regarding his rental property. For example, the Plaintiff alleges that (1) the Defendants conspired to shut down his rental property because he was renting to low income residents, (2) the Defendants knowingly presented false evidence to the board, (3) the Defendants knowingly refused to comply with a subpoena, and (4) he was subject to a malicious prosecution. However, pursuant to *Kollar* and its progeny, the Plaintiff could have included all of these arguments in his state court complaint as a basis to reverse the board's order. Accordingly, notwithstanding his arguments to the contrary, the Plaintiff had a reasonable opportunity to pursue his constitutional arguments in state court.

Moreover, the state trial court and the parties were aware of *Kollar* and the scope of review pursuant to Indiana Code § 36-7-9-8(b). Namely, prior to the start of the state trial court's evidentiary hearing, the following exchange occurred:

> [Plaintiff's counsel]: Finally, Your Honor, before I begin my opening statement and the presentation of evidence, I would like to move for separation of witnesses. Plaintiff intends to call Curtis Vosti, Rosa Thompson, Kurtis Koch, and Kelly Kearney.
>
> THE COURT: Okay, that motion is granted. Defense, who do you folks intend to call?
>
> [Defense counsel]: Your Honor, it's our position that the record before the Court is complete with the transcript of the hearing, and that no witnesses should be called or need to be called for the Court to conduct its judicial review.
>
> THE COURT: Your response.
>
> [Plaintiff's counsel]: My response, Your Honor, is that the case law is clear that evidence may be submitted at a judicial review hearing citing the case of

14

> *Alcantar v. City of Hammond* in which the plaintiff was permitted to supplement the record with additional evidence. I have evidence to establish our version of what happened here and I would like the opportunity to present that evidence.
>
> [Defense counsel]: . . . . The case of *Kollar v. City of South Bend*, and its progeny, make clear that it's only new issues, that would be procedural due process issues, that the Court may consider as new issues. Otherwise, the record is—and the Indiana Unsafe Building Law from which this plaintiff took its appeal to this Court makes very clear of the limited review this Court conducts and it's based upon the extant evidence presented to the Board. Otherwise, it is a trial that this Court is conducting and considering new evidence never considered by the Board, the Board could not have made a Finding, and, therefore, it would be a fundamental harmful error injected into the case.
>
> THE COURT: Let me respond.
>
> [Plaintiff's counsel]: May I reply?
>
> THE COURT: Let me say this, I'm going to allow testimony, witnesses to be called, but there is a caveat in that regard. If it's new evidence, I'm not going to hear it.
>
> [Plaintiff's counsel]: Understood, Your Honor.
>
> THE COURT: Now, with that caveat, I will allow you to call witnesses to testify, but new evidence. I expect an objection if it comes to that will—that objection will be sustained.
>
> [Plaintiff's counsel]: Absolutely, Your Honor.

Ex. D, Tr. of Judicial Review Hr'g, pp. 4–6, ECF No. 61-4, Case Number 2:15-CV-134. As this exchange indicates, the state trial court was aware of *Kollar* and its progeny. Apparently, however, the Plaintiff did not include any procedural due process arguments within his state court complaint. Indeed, the Indiana Court of Appeals concluded that the Plaintiff had waived various constitutional and due process arguments by failing to include them in his state court complaint. *Andrade*, 114 N.E.3d at 516 n. 5, n. 6 (citing *Kollar*, 622 N.E.2d at 622). As such, the Court rejects the Plaintiff's argument that he could not have raised his constitutional arguments in the state court proceedings.

The Plaintiff also argues that he could not have raised his federal claims before the state trial court because he did not "uncover" the Defendants' conspiracy until the state trial court conducted its evidentiary hearing on February 8, 2018. This argument is without merit. On September 4, 2015, in the related case of *Andrade v. City of Hammond*, Case Number 2:15-CV-134, the Plaintiff filed an Amended Complaint [ECF No. 17] in which he alleged that "[t]he Defendant(s) through actions and efforts of various employees . . . did engage in a patterned course of action starting March 15, 2013 in a calculated effort to deny Plaintiff the full use and benefit of his property . . . and those actions continue to this day." Am. Compl. ¶ 4, Case Number 2:15-CV-234. Furthermore, during his closing arguments to the state trial court, the Plaintiff argued at length about the Defendants alleged wrongdoings and their failure to comply with a subpoena. Ex. D, Tr. of Judicial Review Hr'g, pp. 115–16, ECF No. 61-4, Case Number 2:15-CV-134. As such, the Plaintiff was well aware of the alleged conspiracy to deny him the right to use his rental property. At the very least, based upon the allegations he made within his Amended Complaint in the related federal case and the procedural history of the state administrative proceedings, the Plaintiff should have been on notice of any alleged conspiracy and included this claim within his state court complaint. Accordingly, the Court rejects the Plaintiff's argument that he could not have included his federal claims in the state court proceedings.

## CONCLUSION

The Plaintiff's federal claims are inextricably intertwined with the prior state court judgment and the Plaintiff had a reasonable opportunity to raise these issues during the state court proceedings. Therefore, this Court is without subject-matter jurisdiction over the claims in the Complaint due to the *Rooker-Feldman* doctrine. As such, the Defendants' Motions to

Dismiss [ECF Nos. 23, 25] are GRANTED. All other pending Motions [ECF Nos. 42, 43] are DENIED AS MOOT.

SO ORDERED on March 6, 2020.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT